IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


SALLY KROUTH, HAROLD KROUTH,                 04-CV-1045-BR
VIRGINIA MOTIS, SHIRLEY
WHITE, LORRAINE PHELPS,                      OPINION AND ORDER
JOANNE SCHNEIDER, MILDRED NOLAN,
DAVID KNIPPLE, ELLEN KNIPPLE,
JERRY FRANULOVIC, TONCICA
FRANULOVIC, and JUDITH TAVES,

          Plaintiffs,

v.

MICKEY BROWN, an individual; and
THE SCOTT FETZER COMPANY, a
foreign corporation, dba KIRBY,

          Defendants.


RICK KLINGBEIL
Rick Klingbeil, PC
520 S.W. Sixth Avenue, Suite 950
Portland, OR  97204
(503) 473-8565

DAVID SUGERMAN
Paul & Sugerman, P.C.
520 S.W. Sixth Avenue, Suite 920
Portland, OR  97204
(503) 224-6602


1 - OPINION AND ORDER

**BERNARD JOLLES**
Jolles & Bernstein, P.C.
721 S.W. Oak, 2nd Floor
Portland, OR  97205
(503) 228-6474

      Attorneys for Plaintiffs

**THOMAS V. DULCICH**
**WILLIAM J. OHLE**
**ROMAN D. HERNANDEZ**
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suites 1600-1900
Portland, OR  97204
(503) 222-9981

      Attorneys for Defendant The Scott Fetzer Company


**BROWN, Judge.**

    This matter comes before the Court on nine separate Motions for Partial Summary Judgment (#77, #82, #87, #92, #97, #102, #107, #112, #117) filed by Defendant Scott Fetzer Company (SFC).

    In their Third Amended Complaint, Plaintiffs assert four claims against Defendants as follows:  Claim One for breach of contract; Claim Two for money had and received; Claim Three for conversion; and Claim Four for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964(c).

    SFC moved for partial summary judgment as to all or part of Plaintiffs' First, Second, and Third Claims.  On February 16, 2006, the Court heard oral argument on SFC's Motions.  At the hearing, the Court denied SFC's Motions as to Plaintiffs' Third Claim for conversion, denied SFC's Motions insofar as they were

2 - OPINION AND ORDER

based on the doctrine of *in pari delicto*, and denied SFC's Motions regarding the amount of damages. The Court took under advisement SFC's Motions as to Plaintiffs' First Claim for breach of contract and Second Claim for money had and received.

For the reasons that follow, the Court **GRANTS** the remainder of each Motion.

## FACTS

### I. Facts Regarding The Scott Fetzer Company and Mickey Brown

The following facts largely are undisputed and generally are the same for all nine motions.

SFC is a Delaware corporation with a principal place of business in Cleveland, Ohio. The Kirby Company is a division of SFC. In 1986 Mickey Brown became an "independent factory distributor" of Kirby products in Oregon. Brown also engaged in a number of other business ventures including the operation of two finance companies, American First Financial and American Financial Trust, and a nonprofit foundation called "Meet the Needs Foundation." He also was a minister in a church.

Brown's relationship with SFC was governed by a Distributor Agreement. Under the terms of the Agreement, Brown was an independent contractor of SFC. The Agreement expressly provides:

> *13(b) No Agency Relationship*. Nothing in this Agreement or otherwise shall be construed as establishing Distributor as an

> agent, employee or legal representative of
> the Company for any purpose whatsoever.
> Distributor is not authorized to transact
> business, incur obligations, sell goods,
> receive payments, solicit orders or assign or
> create any obligation of any kind, express or
> implied, on behalf of the Company, or to bind
> the Company in any way whatsoever, or to make
> any promise, warranty or representation on
> the Company's behalf with respect to products
> sold by the Company or any other matter,
> except as expressly authorized in writing by
> the Company.  Distributor is not authorized
> to accept any service of process upon the
> Company or to receive any notice of any
> nature whatsoever on the Company's behalf.

In addition to the Distributor Agreement, Kirby also issued Distributor Policies and Recommended Practices.  The Policies include such topics as pricing, reference checks, criminal background checks, and insurance.  Kirby Distributors such as Brown recruited and trained dealers to carry out in-home sales of Kirby vacuums.

Brown's business cards carried the name Brown Kirby Company.  A sign in front of Brown's Tigard, Oregon, office read "Kirby Authorized Sales and Service."  In his office, Brown displayed plaques, awards, and posters bearing the name "Kirby."  Brown often invited people, including many of these Plaintiffs, to tour the Tigard office.  Brown prominently displayed his Kirby ring, Kirby watch, and other signs of Kirby affiliation.

In June 2002, SFC learned police in Corvallis, Oregon, were investigating a complaint against Brown that suggested he was trying to borrow funds from customers to help finance his

4 - OPINION AND ORDER

business operations. Marshall Herron, Kirby Divisional Supervisor for the Northwest region, admonished Brown for this practice and informed Brown that Kirby did not condone it. In November 2002, Kirby Customer Relations Department received a second report of an attempt by Brown to use a customer's credit card to purchase vacuums. SFC again made it clear to Brown that this practice was not acceptable and that SFC would not continue to do business with Brown if he continued.

On January 8, 2003, Kirby Consumer Relations Department received another complaint that Brown was attempting to borrow funds from a customer.

After receiving another complaint in April 2003, SFC terminated Brown's distributorship on May 8, 2003.

## II. **Facts Regarding Plaintiffs**

In 2001 or 2002, all Plaintiffs except Schneider entered into agreements with Brown in which they allowed Brown to use their credit cards to purchase Kirby vacuums for resale. In return for the use of their credit, Brown promised to pay Plaintiffs interest of one or two percent on the balance owed; to make the monthly credit-card payments; and, ultimately, to pay off the entire balance. Plaintiffs Schneider, Knipple, and Franulovic also loaned Brown money from sources other than credit cards. Schneider did not allow Brown to use her credit cards, but agreed to loan Brown money in return for fixed monthly

payments.

Plaintiffs Sally Krouth, Harold Krouth, Virginia Motis, and David Knipple also entered into Kirby Independent Dealer Agreements with Brown.  Each Agreement contained the following introductory language:

> WHEREAS, Distributor [Brown] is an independent authorized factor Distributor . . . of Kirby vacuum cleaners, accessories and attachments (hereinafter referred to as "Kirby Systems") manufactured by The Kirby Company, a division of The Scott Fetzer Company;
>
> WHEREAS, Distributor is engaged in the business of selling Kirby Systems at wholesale to independent Kirby dealers for resale; and
>
> WHEREAS, the Dealer [Plaintiff] desires to engage in his/her own business of buying and reselling Kirby Systems to consumer end-users as an independent Dealer . . . .

In spite of their signatures on this Agreement, each of these Plaintiffs testified they never intended to take possession of any vacuums or to sell vacuums on behalf of Kirby or Brown.

Brown also executed promissory notes made payable to each Plaintiff except Phelps and the Franulovics.  Brown signed the notes on behalf of his businesses, American First Financial, Brown Kirby Company, American First Trust, and Johnny Brown Enterprises.  As additional security, Brown also wrote post-dated checks to the Krouths to be used in the event he did not honor his agreement to pay the debts.  The checks were written on the

account of American First Financial Trust.

In some instances, Brown used Plaintiffs' credit cards to purchase vacuums directly from Kirby. In addition, Brown used the credit to obtain cash and merchandise. In each case, however, Brown's use of Plaintiffs' credit was authorized by Plaintiffs.

Throughout 2002, Brown made payments to Plaintiffs' credit cards and monthly interest or loan payments to Plaintiffs as agreed. In March or April 2003, Brown told Plaintiffs that he could no longer make the payments. Brown gave "credit slips" and form letters to Plaintiffs to use to contest the charges that Brown had made on their credit cards. Some Plaintiffs were successful in getting their creditors to reverse the charges that Brown had made with their credit cards.

## STANDARDS

Fed. R. Civ. P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

7 - OPINION AND ORDER

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## DISCUSSION

### I.   Claim One:  Breach of Contract

SFC asserts it is entitled to summary judgment as to Plaintiffs' claim for breach of contract because SFC was not a party to any of the contracts that Plaintiffs may have had with Brown.  Plaintiffs, however, argue Brown had apparent authority to bind SFC to a contract because he was acting as an agent of SFC when he borrowed money and credit from Plaintiffs.

To prevail on a theory of apparent authority, Plaintiffs must first establish Brown was an agent of SFC.

> Apparent agency is a distinct concept from apparent authority. Apparent agency creates an agency relationship that does not otherwise exist, while apparent authority expands the authority of an actual agent.

*Miller v. McDonald's Corp.*, 150 Or. App. 274, 282 n.4 (1997). Accordingly, apparent authority can arise only if actual agency has been established. *Kotera v. Daioh Int'l USA Corp.*, 179 Or. App. 253, 272 n.14 (2002).

"Agency is a fiduciary relation that results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Rough & Ready Lumber Co. v. Blue Sky Forest Prod.*, 105 Or. App. 227, 231 (1991). An agency relationship can be established by an express agreement between the parties or implied from the circumstances and conduct of the parties. *Larrison v. Moving Floors, Inc.*, 127 Or. App. 720, 723 (1994). "In all cases, however, both the principal's consent to the agency and the principal's right to control the agent are essential elements of the relationship." *Id*. Unless the evidence allows only one inference, the question of agency is one of fact for the jury. *Themins v. Emanuel Lutheran Charity Bd.*, 54 Or. App. 901, 908 (1981), *rev. denied*, 292 Or. 568 (1982).

To prove an agency relationship between Brown and SFC,

9 - OPINION AND ORDER

Plaintiffs must establish 1) the principal's consent to the agency (*i.e.*, SFC's consent for Brown to act as its agent) and 2) the principal's right to control the agent (*i.e.*, SFC's right to control Brown's business).  See *Larrison*, 127 Or App. at 723 ("In all cases . . . both the principal's consent to the agency and the principal's right to control the agent are essential elements of the relationship.").  SFC argues the record does not contain any evidence from which a jury could find either of these elements.

At oral argument, Plaintiffs' counsel asserted the only evidence in the record to support SFC's implied consent to an agency relationship with Brown is his use of Plaintiffs' credit cards to charge merchandise from The Kirby Company.  Brown used the credit cards of the Krouths, Shirley White, Lorraine Phelps, the Franulovics, and Judith Taves to make purchases directly from The Kirby Company in Cleveland, Ohio.  For each of these charges, The Kirby Company shipped vacuums to Brown's office in Tigard, Oregon.  Plaintiffs argue these charges are evidence that SFC consented to Brown's use of Plaintiffs' credit cards to finance his inventory.

The Court, however, finds this evidence does not create an inference that SFC consented to have Brown act as its agent when Brown entered into the agreements with Plaintiffs to use their credit.  At best, the credit-card charges indicate SFC knew Brown

10 - OPINION AND ORDER

was using Plaintiffs' credit cards to purchase his inventory. There is not any evidence in the record from which a trier of fact could find SFC consented to Brown's agreements to pay Plaintiffs for the use of their credit or to repay the charges.

In any event, even if Plaintiffs could show an agency relationship existed between SFC and Brown, they cannot show Brown had apparent authority to enter into the agreements with Plaintiffs to use Plaintiffs' credit or to borrow money from Plaintiffs. Apparent authority is created "only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter. The third party must also rely on that belief." *Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 24 (1991). Thus, Plaintiffs cannot rely on the actions of Brown to prove either agency or the scope of Brown's purported agency. *See Bartnik v. Mutual Life Ins. Co. of New York*, 154 Or. 446, 448 (1936). *See also Hitchman v. Bush,* 195 Or. 640, 642 (1952)("It is well settled that agency cannot be proved by the declarations of the reputed agent."). Plaintiffs have not presented evidence of any conduct by SFC that reasonably could have caused Plaintiffs to believe that SFC consented to Brown borrowing money on SFC's behalf.

In addition, to establish that Brown acted with apparent authority, Plaintiffs must present evidence of conduct by SFC

11 - OPINION AND ORDER

specific to the act of borrowing money from Plaintiffs. *See Badger*, 311 Or. at 24. Plaintiffs have not identified evidence that SFC took any action that reasonably could be interpreted as authorizing Brown to borrow money or credit from Plaintiffs on behalf of SFC. Rather, the evidence in the record supports only a conclusion that SFC disapproved of Brown's practices.

Accordingly, the Court concludes SFC is entitled to summary judgment as to Plaintiff's First Claim.

## II.  Second Claim:  Money Had and Received

Plaintiffs Krouths, Franulovics, White, Phelps, and Taves[1] assert a claim for money had and received based on Brown's use of their credit cards to purchase vacuums from The Kirby Company. Plaintiffs allege "Defendants received a financial benefit from funds charged to plaintiffs' credit cards. Defendants have not returned these funds to plaintiffs. As a matter of equity, this financial benefit belongs to plaintiffs."

Money had and received is a type of action in assumpsit. The assumpsit form of action was developed to provide a remedy in situations in which although there was no contract, the law would create a promise to pay in order to avoid unjust enrichment. *Davis v. Tyee Indus., Inc.*, 295 Or. 467, 469 (1983). "The money count for money had and received came to be used as a vehicle to

---

[1] The remaining Plaintiffs have withdrawn their claim for money had and received.

12 - OPINION AND ORDER

recover damages for torts.  If one by fraud, duress, trespass or other tort obtained another's property and converted it or sold it to another, it was said that the plaintiff could 'waive' the tort and sue in assumpsit."  *Id.* at 470.  Historically the assumpsit cause of action was preferable to an action for conversion in some situations because the plaintiff could recover damages equal to the wrongdoer's enrichment, which was sometimes greater than the value of the converted goods.  *Id.*  "An essential element of the action is that the defendant wrongfully appropriated the plaintiff's property and was thereby unjustly enriched."  *McCarthy v. Tomlinson*, 91 Or. App. 685, 689 (1988).  *See also Davis*, 295 Or. at 469.

The Court finds Plaintiffs' Second Claim fails because the record does not support an inference that SFC was unjustly enriched by Brown's authorized use of Plaintiffs' credit cards.  Rather the record shows only that The Kirby Company received credit-card payments in return for providing vacuums to Brown.

Accordingly, the Court concludes SFC is entitled to summary judgment as to Plaintiffs' Second Claim.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendant's Motions for Partial Summary Judgment (#77, #82, #87, #92, #97, #102, #107,

13 - OPINION AND ORDER

#112, #117) as to Plaintiffs' First and Second Claims.

IT IS SO ORDERED.

DATED this 20th day of March, 2006.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER