IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SALLY KROUTH, HAROLD KROUTH,            04-CV-1045-BR
VIRGINIA MOTIS, SHIRLEY
WHITE, LORRAINE PHELPS,                 OPINION AND ORDER
JOANNE SCHNEIDER, MILDRED NOLAN,
DAVID KNIPPLE, ELLEN KNIPPLE,
JERRY FRANULOVIC, TONCICA
FRANULOVIC, and JUDITH TAVES,

      Plaintiffs,

v.

MICKEY BROWN, an individual, and
THE SCOTT FETZER COMPANY, a
foreign corporation, dba KIRBY,

      Defendants.


CHARLES A. RINGO
Charlie Ringo & Associates, P.C.
974 N.W. Riverside Blvd.
Bend, OR 97701
(541) 330-6447

      Attorneys for Plaintiffs

**THOMAS V. DULCICH**
**WILLIAM J. OHLE**
**ROMAN D. HERNANDEZ**
Schwabe, Williamson & Wyatt, P.C.
1211 S.W. Fifth Avenue, Suites 1600-1900
Portland, OR  97204
(503) 222-9981

   Attorneys for Defendant The Scott Fetzer Company


**BROWN, Judge.**

  This matter comes before the Court on Defendant The Scott Fetzer Company's Motion to Strike (#288) and Motion for Partial Summary Judgment (#266).[1]

  In their Fourth Amended Complaint, Plaintiffs bring eighteen claims.  In Claims One, Three, Five, Nine, Eleven, Thirteen, Fifteen, and Seventeen, Plaintiffs allege The Scott Fetzer Company (SFC) violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1964(a) and (c), in connection with a series of allegedly fraudulent loan transactions.  In Claims Two, Four, Six, Ten, Twelve, Fourteen, Sixteen, and Eighteen, Plaintiffs allege SFC is liable for common-law conversion.[2]

  On October 23, 2006, the Court heard oral argument on SFC's

---

  [1] Defendant Mickey Brown appears *pro se* in this action and did not file any pleadings.

  [2] Plaintiff's Fourth Amended Complaint does not include a Claim Seven or Eight.

2 - OPINION AND ORDER

Motions and took them under advisement.

For the reasons that follow, the Court **DENIES** SFC's Motion to Strike, **GRANTS** SFC's Motion for Summary Judgment as to Plaintiffs' RICO claims, and **DENIES** SFC's Motion for Summary Judgment as to the damages standard for Plaintiff's conversion claims.

## FACTS

The following facts are undisputed unless otherwise noted and, if disputed, are stated in the light most favorable to Plaintiffs.

**I.   Relationship between Defendants**

SFC is a Delaware corporation with its principal place of business in Cleveland, Ohio.  The Kirby Company is one of SFC's divisions that distributes Kirby vacuum cleaners.  In 1986 Mickey Brown became an "independent factory distributor" of Kirby products in Oregon under a standard distributor agreement with SFC.  Brown also engaged in a number of other business ventures including the operation of two finance companies known as American First Financial and American Financial Trust.

SFC issues policies and recommended practices to its distributors.  The policies cover such topics as pricing, reference checks, criminal background checks, and insurance.

Distributors such as Brown recruit and train others to carry out in-home sales of Kirby products.

When operating his Kirby distributorship, Brown reported to Marshall Herron, SFC's Division Supervisor for the Northwest region at all relevant times.  Herron, in turn, reported to Frank Venditti, SFC's President of North American Field Sales.  As part of their compensation, both Venditti and Herron received financial rewards when their distributors produced large sales volume.  Thus, both men had a financial interest in ensuring that distributors such as Brown were successful.

In June 2002, SFC learned police in Corvallis, Oregon, were investigating a complaint against Brown that he was trying to borrow funds from customers to help finance his business operations.  Herron admonished Brown that he should not solicit loans from customers and told him that SFC did not condone that practice.  In November 2002, SFC's Customer Relations Department received a second report of an attempt by Brown to use a customer's credit card to purchase vacuums.  This time both Venditti and Herron met with Brown on SFC's behalf to reiterate that this practice was unacceptable and that SFC would not continue to do business with Brown if he did not stop.  Both Venditti and Herron were satisfied after these discussions that Brown would not continue to solicit loans from customers.

4 - OPINION AND ORDER

Brown, however, did not stop.  On January 8, 2003, SFC's Consumer Relations Department received another complaint that Brown was attempting to borrow funds from a customer.  After yet another complaint in April 2003, SFC terminated Brown's distributorship on May 8, 2003.

## II.  **Relationship between Plaintiffs and Defendants**

In 2001 or 2002, all Plaintiffs except Joanne Schneider entered into agreements with Brown in which they gave him permission to use their credit cards to purchase Kirby vacuums for resale.  In return for the use of their credit lines, Brown promised to pay interest of one or two percent to Plaintiffs on the balances owed, to make the monthly credit-card payments, and eventually to pay off the entire balance.

Joanne Schneider, Ellen and David Knipple, and Jerry and Toncica Franulovic also lent Brown money from sources other than credit cards.  Although as noted, Schneider did not allow Brown to use her credit cards, she agreed to lend Brown money in return for fixed monthly payments.

At least two of Plaintiffs' family members worked for or with Brown at various times.  Brian Schneider, the son of Joanne Schneider, planned to open his own Kirby distributorship.  Joanne Schneider lent Brown funds to further this goal.  Dalma Franulovic, the daughter of Jerry and Toncica Franulovic, also worked for or with Brown in his distributorship and was present

on at least one occasion when Brown solicited loans from her parents.

Brown offered Plaintiffs various security for the loans. For example, Brown executed promissory notes payable to each Plaintiff except Phelps and the Franulovics.  Brown signed the notes on behalf of his various businesses such as American First Financial, Brown Kirby Company, and American First Trust.  Brown also wrote post-dated checks to the Krouths to be cashed if Brown did not honor his repayment obligation.  The checks were written on the account of American First Financial Trust.

In some instances, Brown used Plaintiffs' credit cards to purchase vacuums directly from Kirby.  Brown also used the credit cards to obtain cash and merchandise.  In each case, Brown's use of Plaintiffs' credit cards was authorized by Plaintiffs.

Throughout 2002, Brown made payments to Plaintiffs' credit cards and monthly interest or loan payments to Plaintiffs as agreed.  Plaintiffs contend these payments increased their confidence in Brown and caused them to lend him more money.  In March or April 2003, however, Brown told Plaintiffs that he could no longer make the payments.  Brown gave "credit slips" and form letters to Plaintiffs to use to contest the charges that Brown had incurred on their credit cards.  Some Plaintiffs were successful in getting their creditors to reverse the charges.

6 - OPINION AND ORDER

On July 2, 2004, Plaintiffs filed a complaint against Defendants in Multnomah County Circuit Court.  SFC removed the action to this Court on July 29, 2004.

On March 21, 2006, the Court issued an Opinion and Order granting SFC's Motion for Summary Judgment as to Plaintiffs' state-law claims for breach of contract and money had and received and denying SFC's Motion as to Plaintiffs' conversion claims.  SFC did not move for summary judgment as to Plaintiffs' RICO claims at that time.

Plaintiffs filed their Fourth Amended Complaint on May 15, 2006, re-alleging RICO and conversion claims.  On May 16, 2006, SFC filed a Motion for Partial Summary Judgment as to all of Plaintiffs' RICO claims and Plaintiffs' claims for punitive damages arising from their conversion claims.

On July 21, 2006, SFC filed a Motion to Strike portions of the Affidavits filed by Plaintiffs in opposition to SFC's Motion for Summary Judgment.


## SFC'S MOTION TO STRIKE

Pursuant to Federal Rule of Civil Procedure 56(e) and Federal Rule of Evidence 602, SFC moves to strike portions of the Affidavits filed by Plaintiffs in opposition to SFC's Motion for Summary Judgment.

It is well settled that only admissible evidence may be considered when ruling on a motion for summary judgment.  *See* Fed. R. Civ. P. 56(e).  *See also Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

**I.   The Krouth, Motis, White, Joanne Schneider, Nolan, Knipple, Franulovic, and Taves Affidavits**.

In their Affidavits, Plaintiffs Sally Krouth, Virginia Motis, Shirley White, Joanne Schneider, Mildred Nolan, David Knipple, Toncica Franulovic, and Judith Taves each make statements similar to the following:

> The representations Brown made to me [on the relevant dates], where he assured [me/us] that he would repay the entire balance and pay interest under a specified schedule, were false.  It is clear now that Brown knew the representations were false at the time he made them.  Brown intended for [me/us] to rely on his representations, and we did rely on them, causing us financial damage.

*See, e.g.*, Sally Krouth Aff. at 3, ¶ 6.

Affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).

SFC contends these statements are inadmissible under Federal Rule of Evidence 602 because Plaintiffs have not laid any foundation and do not have personal knowledge about Brown's mental state when he made the allegedly false representations.

The Court agrees those statements by Plaintiffs' are inadmissible in which they assert Brown knew his representations were false when he made them.  Plaintiffs have not established a basis for having personal knowledge as to Brown's mental state at the time the loan solicitations were made.  Thus, the Court will not consider such conclusory statements for purposes of resolving SFC's Motion for Partial Summary Judgment.

## II.  **Brian Schneider's Affidavit**

Brian Schneider, the son of Joanne Schneider, testified "[SFC] directed the precise way that dealers should make the in-home sales pitch, including the demonstration of the vacuum cleaner."  Brian Schneider Aff. at 2, ¶ 6.  SFC contends Brian Schneider is merely speculating about SFC's business practices and fails to establish that he has personal knowledge of this directive.  The Court notes, however, Schneider also testifies in his Affidavit that he "was frequently tasked training dealers in how to make the in-home sales pitch."  Brian Schneider Aff. at 2, ¶ 6.  Moreover, Schneider worked with Brown and was preparing to become a Kirby distributor.  Thus, Schneider was in a position to have personal knowledge of the facts underlying his statement.

Accordingly, the Court denies SFC's Motion to Strike those portions of Brian Schneider's Affidavit objected to by SFC for purposes of resolving SFC's Motion for Partial Summary Judgment.

**III. The Greg Grunlose Affidavit**

In his Affidavit, Greg Grunlose testifies:

> Despite written disclaimers, [SFC]
> Headquarters, through the Kirby Northwest
> Division, dictated the precise way that day-to-
> day operations should occur in a distributor's
> office.  This includes recruiting salesmen,
> making the in-home sales pitch, providing
> promotions and incentives for sales, and
> tracking inventory.

Grunlose Aff. at 3, ¶ 8.  SFC contends Grunlose's testimony directly contradicts his deposition testimony in which he stated Brown had a "unique way of running his distributorship" that SFC "went along with" for the most part.

A party cannot create an issue of fact in opposition to a motion for summary judgment by submitting an affidavit that contradicts prior deposition testimony.  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact."  *Id.* (citations omitted).  A "district court must make a factual determination that the contradiction was actually a 'sham'" before disregarding allegedly contradictory evidence.  *Id.* at 267.

The Court finds Grunlose's Affidavit does not necessarily

10 - OPINION AND ORDER

contradict his deposition testimony.  The statement Grunlose made in his Affidavit describes his perception of SFC's general practices rather than SFC's specific relationship with Brown. Thus, the Court does not find the alleged inconsistency between Grunlose's testimony in his Affidavit and at deposition constitutes a sham for purposes of resolving SFC's Motion for Partial Summary Judgment.

Accordingly, the Court denies SFC's Motion to Strike those portions of the Grunlose Affidavit objected to by SFC.

## SFC's MOTION FOR PARTIAL SUMMARY JUDGMENT

### Standards

Federal Rule of Civil P. 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  The moving party must show the absence of an issue of material fact. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial.  *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

11 - OPINION AND ORDER

248 (1986)).   The court must draw all reasonable inferences in favor of the nonmoving party.  *Id*.  A mere disagreement about a material issue of fact, however, does not preclude summary judgment.  *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).

The substantive law governing a claim or a defense determines whether a fact is material.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001).

## Discussion

SFC moves for partial summary judgment as to all of Plaintiffs' RICO claims and to the damages available to Plaintiffs for their conversion claims.

**I.   Claims One, Three, Five, Nine, Eleven, Thirteen, Fifteen, and Seventeen:  Alleged RICO Violations by SFC.**

Plaintiffs allege Brown's loan solicitations, which were carried out by both mail and wire transfers, were fraudulent and constituted a pattern of racketeering activity in violation of RICO.  Plaintiffs contend SFC is liable for Brown's conduct under RICO provisions 18 U.S.C. §§ 1962(a) and (c).  SFC, in turn, seeks summary judgment against all of Plaintiffs' RICO claims.

12 - OPINION AND ORDER

A.    <u>RICO Violation Under 18 U.S.C. § 1962(c) Generally.</u>

To establish a civil violation of RICO, 18 U.S.C. § 1962(c), a plaintiff must show there was (1) conduct, (2) of a RICO enterprise, (3) through a pattern, (4) of racketeering activity, and (5) the defendant caused injury to the plaintiff's business or property. *Chaset v. Fleet/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

At the heart of a RICO claim is whether there was a RICO "enterprise." An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "A single individual cannot be both the RICO enterprise and an individual RICO defendant." *River City Mkt., Inc. v. Fleming Foods West, Inc.*, 960 F.2d 1458, 1461 (9th Cir. 1992). The existence of a RICO enterprise is a separate element that a RICO plaintiff must prove. *Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1112 (9th Cir. 2003).

Plaintiffs argue Brown was part of an associated-in-fact RICO enterprise, which requires Plaintiffs to offer "proof (1) of an ongoing organization, formal or informal, (2) which exhibits a hierarchical or consensual decision-making structure beyond that inherent in the alleged racketeering activity, and (3) in which the various associates function as a continuing unit." *See*

13 - OPINION AND ORDER

*United States v. Fernandez*, 388 F.3d 1199, 1223 (9th Cir. 2004). *See also United States v. Turkette*, 452 U.S. 576, 583 (1981); *Chang v. Chen*, 80 F.3d 1293, 1297-1300 (9th Cir. 1996). According to Plaintiffs, the alleged enterprise in this matter subjects SFC to RICO liability.

### 1. **An Ongoing Organization, Formal or Informal.**

Plaintiffs contend the association of Brown, Venditti, and Herron through a hierarchical relationship as part of SFC's management structure constituted an ongoing organization for purposes of establishing a RICO enterprise. Herron was SFC's Division Supervisor for the Northwest region at all relevant times[3] and Venditti was and is SFC's President of North American Field Sales. As part of their respective duties to SFC, Brown as a distributor reported to Herron who reported to Venditti about vacuum-cleaner sales activities, and Heron and Venditti earned financial rewards when distributors like Brown produced large sales volume. Thus, for RICO purposes, Plaintiffs contend this association existed separately from the alleged racketeering activity of fraudulent loan solicitations.

Although SFC admits Brown, Venditti, and Herron were associated through Brown's legitimate business dealings with SFC, SFC argues there is not any evidence that the Brown, Herron, and

---

[3] Herron has since left his position with SFC.

14 - OPINION AND ORDER

Venditti business association had any collective aim to engage in criminal or fraudulent activities.

On these facts, it is undisputed that Brown, Venditti, and Herron were business associates through their respective relationships with SFC.  SFC's argument that their association does not constitute a RICO enterprise, however, is more appropriately determined under the second and third elements required for a RICO enterprise.

**2.    Hierarchical or Consensual Decision-Making Structure beyond that Inherent in the Alleged Racketeering Activity.**

Plaintiffs concede Venditti and Herron were not directly involved in Brown's loan solicitations.  On these facts, therefore, there is not any evidence that Venditti and Herron were involved with Brown in an association with a decision-making structure that existed to solicit loans, fraudulently or otherwise.

Plaintiffs maintain, however, that Brown's Kirby distributorship together with his two other sole proprietorships, American First Financial and American Financial Trust, had a sufficient decision-making structure to satisfy this element. For SFC to be liable under RICO, however, Plaintiffs would have to establish that Brown's organizations constitute a RICO enterprise and, in addition, that SFC is vicariously liable for that enterprise's RICO violations.  *See, e.g., Brady v. Dairy*

*Fresh Prod. Co.*, 974 F.2d 1149, 1154 (9th Cir. 1992)("We hold that an employer that is benefited by its employee or agent's violations of section 1962(c) may be held liable under the doctrines of respondeat superior and agency when the employer is distinct from the enterprise.").

To support their contention, Plaintiffs point out the Ninth Circuit has held a corporation can fulfill the requirement of an ascertainable structure apart from the alleged racketeering activity. *See United States v. Kirk*, 844 F.2d 660, 664 (9th Cir. 1988). *See also United States v. Feldman*, 853 F.2d 648, 660 (9th Cir. 1988). Moreover, Plaintiffs argue the Ninth Circuit implied in *United States v. Benny* that a sole proprietorship can provide sufficient decision-making structure for purposes of establishing a RICO enterprise. 786 F.2d 1410 (9th Cir. 1986).

In *Benny*, the defendant, operator of a sole proprietorship with four employees, was convicted of RICO violations under 18 U.S.C. § 1962(c). The defendant argued he could not have been part of a RICO enterprise because his business was a sole proprietorship, which is legally the same entity as its owner. *Id*. at 1415. Thus, the defendant argued, the RICO enterprise would consist of an individual associating with himself. *Id*. The Ninth Circuit, however, affirmed the defendant's RICO conviction. The court found the defendant and

16 - OPINION AND ORDER

multiple co-defendants personally participated in the RICO predicate activities. *Id.* at 1413, 1415. Although the RICO enterprise in *Benny* was partially a sole proprietorship, it was also "an association of four individuals allegedly operating under the name of one of them" and, therefore, more than just a sole proprietorship. *Id.* at 1415. The *Benny* defendant's RICO enterprise, consequently, "was a troupe, not a one-man show." *Id.* at 1416. Thus, the *Benny* court found a sole proprietorship can be part of a RICO enterprise, but only when parties other than the sole proprietor participate in the RICO predicate activity.

For *Benny* to govern Plaintiffs' RICO claims, therefore, the record must reflect that someone other than Brown was materially involved in the alleged RICO predicate loan solicitations. Moreover, the Ninth Circuit has held a RICO enterprise requires a decision-making structure that provides some control mechanism on an ongoing basis rather than a mere *ad hoc* or isolated basis. *See Chang*, 80 F.3d at 1299.

As noted, Plaintiffs concede Venditti and Herron were not directly involved in Brown's loan solicitations, and the record does not reflect they knew about Brown's loan solicitations before they occurred. Moreover, there is not any evidence in the record to indicate any employee of SFC was

17 - OPINION AND ORDER

involved in or knew about the loan solicitations before they were made.  In fact, the evidence establishes Venditti and Herron, acting on SFC's behalf, disapproved of Brown's solicitations and told Brown to stop at the risk of SFC terminating his distributorship.  Although the involvement of Brian Schneider and Dalma Franulovic (who do not appear to have been employees of SFC) with Brown's Kirby distributorship might have helped Brown to solicit loans from Joanne Schneider and the Franulovics more easily, the limited conduct of Brian Schneider and Dalma Franulovic with Brown does not establish that anyone other than Brown made the decision to solicit the loans or, in fact, actually solicited the loans.

In summary, there is not any evidence on which to base a conclusion that Brown operated anything but a "one-man show" with respect to his allegedly fraudulent loan solicitations. Accordingly, the Court concludes on this record that a reasonable juror could not find that the facts establish a consensual or hierarchical decision-making structure for purposes of a RICO enterprise.

     3.   **Various Associates Functioning as a Continuing Unit.**

Finally, Plaintiffs contend Brown's alleged RICO enterprise carried on its loan solicitations for a sufficient length of time (from 2001 through 2003) to function as a continuing unit.

18 - OPINION AND ORDER

Even if there were a consensual or hierarchical decision-making structure, a continuing unit requires a connection or nexus between the conduct of the RICO enterprise and the alleged racketeering activity. *See, e.g., River City Mkt.*, 960 F.2d at 1462-63 (citing 28 U.S.C. § 1962(c)); *Nugget Hydroelectric, L.P. v. Portland Gen. Elec.*, 981 F.2d 429, 431 (9th Cir. 1992). Thus, "the associates [of the alleged enterprise] must participate, directly or indirectly[,] in the conduct of such enterprise's affairs through a pattern of racketeering activity." *River City Mkt.*, 960 F.2d at 1462-63 (internal quotations omitted).

Even assuming Brown fraudulently solicited loans, which has not been established, the record does not reflect anyone other than Brown would have known the solicitations were fraudulent (*i.e.*, that the funds were solicited with the knowledge that they would not be repaid). On this record, Brown appears to be the only party who may have committed fraud, and, therefore, Brown was the only party who could have participated in the alleged racketeering activity. In other words, the record does not reflect a nexus between the alleged RICO enterprise and the alleged predicate activities.

Accordingly, the Court concludes on this record that a reasonable juror could not find various associates functioned as a continuing unit for purposes of a RICO enterprise.

19 - OPINION AND ORDER

**B.    RICO Violation Under 18 U.S.C. § 1962(a) Generally.**

Plaintiffs also allege SFC is liable pursuant to 18 U.S.C.
§ 1962(a).  Like 18 U.S.C. § 1962(c), 18 U.S.C. § 1962(a)
requires the existence of a RICO enterprise.  Section 1962(a)
makes it "unlawful for any person who has received income derived
from a pattern of racketeering activity 'to use or invest' that
income 'in acquisition of any interest in, or the establishment
or operation of,' an enterprise engaged in or affecting
interstate or foreign commerce."  *Anza v. Ideal Steel Supply
Corp.*, 126 S. Ct. 1991, 1995 (2006).

In light of the fact that the Court already has concluded
Plaintiffs have not established that such an enterprise existed,
Plaintiffs' claims against SFC under § 1962(a) cannot succeed.

In summary, the Court grants SFC's Motion for Summary
Judgment as to Plaintiffs' Claims One, Three, Five, Nine, Eleven,
Thirteen, Fifteen, and Seventeen based on alleged RICO violations
under 18 U.S.C. §§ 1962(a) and (c).

**II.  Plaintiffs' Claims Two, Four, Six, Ten, Twelve, Fourteen,
      Sixteen, and Eighteen:  Alleged Conversions by SFC.**

Plaintiffs also allege Brown's loan solicitations constitute
conversion under Oregon law and that SFC is liable either
vicariously or through agency principles.  Plaintiffs, therefore,
seek punitive damages against SFC for the alleged conversions.

SFC, however, asserts Plaintiffs may only recover punitive
damages if they establish by clear and convincing evidence that

20 - OPINION AND ORDER

SFC is liable for conversion and acted with malice or reckless indifference as required by Or. Rev. Stat. § 31.730.

Section 31.730(1) provides:

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

Because the Court ruled in its Opinion and Order issued March 20, 2006, that there was insufficient evidence to establish that Brown acted as SFC's agent, SFC contends the only way it could be liable for Brown's alleged conversions is through vicarious liability. In addition, even if SFC were vicariously liable for conversion, SFC argues the Oregon Supreme Court has recognized only limited situations in which punitive damages would be appropriate under the circumstances. In *Stroud v. Denny's Restaurant, Inc.*, for example, the Oregon Supreme Court upheld a punitive damages award against an employer when the evidence established its employee was acting in the scope of employment, performed a service in furtherance of his employer's business, and was directed by his employer to act in such a manner. 271 Or. 430, 437 (1975). Here Brown was never SFC's employee and was never directed by SFC to engage in the allegedly

21 - OPINION AND ORDER

fraudulent loan practices.

In *Johannesen v. Salem Hospital*, the defendant argued it could not be vicariously liable for punitive damages based on the conduct of another without evidence of fault on its part. 336 Or. 211, 219 (2003). The court noted it had "considered and rejected that theory" in *Stroud*. *Id.* Moreover, the court

> perceive[d] no reason to revisit
> [*Stroud*] in this case. At this stage,
> we cannot decide finally whether
> defendant *is* vicariously liable for the
> conduct of its health practitioners. It
> is sufficient to state that defendant is
> incorrect in arguing that the record
> demonstrates that its health
> practitioners acted without malice.
> Consequently, factual disputes
> surrounding defendant's possible
> vicarious liability for its servants'
> conduct require the court to grant
> plaintiff's motion to amend.

*Id.* The *Johannesen* court makes it clear it would be premature to determine whether punitive damages are available when the question of vicarious liability itself is still undecided.

In its Opinion and Order issued March 20, 2006, the Court pointed out it had denied SFC's Motion for Summary Judgment as to Plaintiffs' conversion claims. Thus, the issue as to whether SFC is vicarious liability remains unresolved.

Accordingly, the Court denies SFC's Motion for Summary Judgment as to the availability of punitive damages for Plaintiffs' conversion claims.

22 - OPINION AND ORDER

## PLAINTIFFS' STATE-LAW CLAIMS

As noted, although the Court has resolved all of Plaintiffs' claims arising under federal law, Plaintiffs' state-law conversion claims remain unresolved.

The Court, in the exercise of its discretion, may decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) when it dismisses all claims over which it had original jurisdiction. *See* 28 U.S.C. § 1367(c)(3).  When deciding whether to exercise supplemental jurisdiction or to remand the state-law claims, the district court must consider the underlying objectives of judicial economy, fairness, and comity.  *Executive Software N. Am., Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1557 (9th Cir. 1994).

This complex matter has been before the Court for a considerable time, and the Court has made numerous rulings that may result in an appeal to the Ninth Circuit.  It would not serve the underlying objectives of judicial economy, fairness, and comity to remand the matter to state court when a separate appellate track would be created for issues resolved in the state trial court.

Accordingly, in the exercise of its discretion, the Court retains jurisdiction over Plaintiffs' state-law conversion claims.

## CONCLUSION

For these reasons, the Court **DENIES** SFC's Motion to Strike (#288); **GRANTS** SFC's Motion for Summary Judgment (#266) as to Plaintiffs' RICO Claims One, Three, Five, Nine, Eleven, Thirteen, Fifteen, and Seventeen; and **DENIES** SFC's Motion as to the damages standard for Plaintiff's conversion Claims Two, Four, Six, Ten, Twelve, Fourteen, Sixteen, and Eighteen.

IT IS SO ORDERED.

DATED this 18th day of December, 2006.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge